Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY MAREK,<br><br>        Plaintiff,<br><br>    vs.<br><br>IMMUNOGEN, INC., STEPHEN C. MCCLUSKI, STUART A. ARBUCKLE, MARK J. ENYEDY, MARK A. GOLDBERG, TRACEY L. MCCAIN, DEAN J. MITCHELL, KRISTINE PETERSON, HELEN THACKRAY, and RICHARD J. WALLACE.<br><br>        Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Gary Marek ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## <u>SUMMARY OF THE ACTION</u>

1.      Plaintiff brings this stockholder action against ImmunoGen, Inc. ("ImmunoGen" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of

Defendants' efforts to sell the Company to AbbeVie Inc. ("Parent") and Athene Subsidiary LLC ("Intermediate Sub") through merger vehicle Athene Merger Sub, Inc. ("Merger Sub," and collectively with "Parent" and "Intermediate Sub", "AbbVie") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a November 30, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, AbbVie will acquire all of the remaining outstanding shares of ImmunoGen's common stock at a price of $31.26 per share in cash (the "Merger Consideration"). The Company will survive the Merger as a subsidiary of Intermediate Sub.

3.     Thereafter, on December 21, 2023, the Company filed its Preliminary Proxy Statement on Schedule 14A with the United States Securities and Exchange Commission (the "SEC").  Thereafter, on January 2, 2024, the Company filed its Definitive Proxy on Schedule 14A with the SEC (the "Definitive Proxy," and together with the Preliminary Proxy Statement, the "Definitive Proxy Statement."

4.     It appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own large illiquid blocks of Company stock which will be converted into merger consideration; (b) Company insiders own company options, restricted stock units, and other equity awards, all of which are subject to accelerated vesting and conversion into merger consideration; and (c) certain Company executives are entitled to severance packages,

often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Definitive Proxy Statement with the SEC in an effort to solicit public stockholders such as Plaintiff to vote his ImmunoGen shares in favor of the Proposed Transaction.

6.      The Definitive Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Definitive Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the necessity for hiring two financial advisors for the proposed transaction; (c) the financial projections for ImmunoGen, provided by the Company to the Company's financial advisors Goldman Sachs & Co. LLC ("Goldman Sachs") and Lazard Frères & Co. LLC ("Lazard"); and (d) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Goldman Sachs and Lazard (respectively), and provided to the Board.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.      Plaintiff is a citizen of Illinois and, at all times relevant hereto, has been an ImmunoGen stockholder.

9.      Defendant ImmunoGen, a commercial-stage biotechnology company, focuses on developing and commercializing the antibody-drug conjugates (ADCs) for cancer patients.

ImmunoGen is incorporated under the laws of the State of Massachusetts and has its principal place of business at 830 Winter Street, Waltham, MA 02451.  Shares of ImmunoGen common stock are traded on the NASDAQ Stock Exchange under the symbol "IMGN".

10.     Defendant Stephen C. McCluski ("McCluski") has been the Chairman of the Board of Directors of the Company at all relevant times.

11.     Defendant Stuart A. Arbuckle ("Arbuckle") has been a director of the Company at all relevant times.

12.     Defendant Mark J. Enyedy ("Enyedy") has been a director of the Company at all relevant times. Enyedy is also the President and Chief Executive Officer of the Company.

13.     Defendant Mark A. Goldberg ("Goldberg") has been a director of the Company at all relevant times.

14.     Defendant Tracey L. McCain ("McCain") has been a director of the Company at all relevant times.

15.     Defendant Dean J. Mitchell ("Mitchell") has been a director of the Company at all relevant times.

16.     Defendant Kristine Peterson ("Peterson") has been a director of the Company at all relevant times.

17.     Defendant Helen Thackray ("Thackray") has been a director of the Company at all relevant times.

18.     Defendant Richard J. Wallace ("Wallace") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 10-18 are collectively referred to as the "Individual Defendants."

20.     Non-Party AbbVie Inc., develops, manufactures, and sells pharmaceuticals worldwide.

21.     Non-Parties Intermediate Sub and Merger Sub are wholly owned subsidiaries of AbbVie created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

25.     ImmunoGen, a commercial-stage biotechnology company, focuses on developing and commercializing the antibody-drug conjugates (ADCs) for cancer patients. The Company's

product candidates include mirvetuximab soravtansine, an ADC targeting folate-receptor alpha (FRa), for the treatment of platinum-resistant ovarian cancer; and a cell-surface protein expressed in various epithelial tumors, including ovarian, endometrial, and non-small-cell lung cancers, as well as Pivekimab sunirine, a CD123-targeting ADC that is in Phase II clinical trial for treating acute myeloid leukemia and blastic plasmacytoid dendritic cell neoplasm.

26.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the November 2, 2023 press release announcing its 2023 Q3 financial results, the Company highlighted such milestones as generating ELAHERE net sales of $105.2 million for the quarter ended September 30, 2023. Further, the Company's total revenue was $113.4 million for the quarter ended September 30, 2023, compared to $15.4 million in total revenues for the quarter ended September 30, 2022.

27.     Speaking on these positive results, CEO Defendant Enyedy commented on the Company's positive financial results as follows, "Building on the momentum generated in the first half of 2023, we delivered a strong third quarter highlighted by significant ELAHERE revenue growth and the achievement of key operational milestones." Enyedy furthered this sentiment by stating, "With a 36% increase in sequential quarterly net sales and over $210 million in product revenue through the first nine months of the year, ELAHERE is tracking towards one of the most successful first product launches in oncology in a decade."

28.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by ImmunoGen.  Clearly, based upon these positive financial results and outlook, the Company is likely to have future success.

29.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused ImmunoGen to enter into the Proposed Transaction without providing requisite information to the Company's stockholders such as Plaintiff.

***The Flawed Sales Process***

30.     As detailed in the Definitive Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company to AbbeVie.

31.     First, the Definitive Proxy Statement fails to adequately disclose the reasoning as to why the Board decided to hire both Goldman Sachs and Lazard and to agree to pay each advisor $77 million.

32.     In addition, the Definitive Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and AbbVie and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Definitive Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.     Moreover, the Definitive Proxy Statement fails to adequately disclose the reasoning behind contacting only five (5) companies in its search for possible strategic alternatives. It cannot explain this limited process away by citing the final deal price and claiming that the Company would not receive an offer better than the final AbbVie offer of $31.26 per share in cash.

34.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

35.     On November 30, 2023, ImmunoGen and AbbVie issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> NORTH CHICAGO, Ill., and WALTHAM, Mass., November 30, 2023 /PRNewswire/ -- AbbVie Inc. (NYSE: ABBV) and ImmunoGen, Inc. (NASDAQ: IMGN) today announced a definitive agreement under which AbbVie will acquire ImmunoGen, and its flagship cancer therapy ELAHERE® (mirvetuximab soravtansine-gynx), a first-in-class antibody-drug conjugate (ADC) approved for platinum-resistant ovarian cancer (PROC). The acquisition accelerates AbbVie's commercial and clinical presence in the solid tumor space. Additionally, ImmunoGen's follow-on pipeline of promising next-generation ADCs further complements AbbVie's ADC platform and existing programs.
>
> Under the terms of the transaction, AbbVie will acquire all outstanding shares of ImmunoGen for $31.26 per share in cash. The transaction values ImmunoGen at a total equity value of approximately $10.1 billion. The boards of directors of both companies have approved the transaction. This transaction is expected to close in the middle of 2024, subject to ImmunoGen shareholder approval, regulatory approvals, and other customary closing conditions.
>
> "The acquisition of ImmunoGen demonstrates our commitment to deliver on our long-term growth strategy and enables AbbVie to further diversify our oncology pipeline across solid tumors and hematologic malignancies," said Richard A. Gonzalez, chairman and chief executive officer, AbbVie. "Together, AbbVie and ImmunoGen have the potential to transform the standard of care for people living with cancer."
>
> ImmunoGen's oncology portfolio has the potential to help drive long-term revenue growth for AbbVie's oncology franchise. Ovarian cancer is the leading cause of death from gynecological cancers in the U.S. ELAHERE is the first targeted medicine to show meaningful survival benefit in PROC. As a fast-growing solid tumor therapy, ELAHERE provides AbbVie with a potential multi-billion-dollar on-market medicine with expansion opportunities in earlier lines of therapy and larger segments of the ovarian cancer market.
>
> "With global commercial infrastructure and deep clinical and regulatory expertise, AbbVie is the right company to accelerate geographic and label expansion, and realize the full potential of ELAHERE as the first and only ADC approved in ovarian cancer," said Mark Enyedy, president and chief executive officer,

ImmunoGen. "The addition of ImmunoGen's pipeline, platform, and expertise to AbbVie's oncology portfolio is an exciting opportunity for the combined companies to advance innovation in ADCs. This transaction is the culmination of our 40-year commitment to develop and deliver the next-generation of ADCs and more good days for people living with cancer."

ELAHERE is a first-in-class ADC targeting folate receptor alpha (FRα) with a maytansinoid payload DM4, a potent tubulin inhibitor designed to kill the targeted cancer cells. ELAHERE received U.S. Food and Drug Administration (FDA) accelerated approval in 2022 for the treatment of adult patients with FRα positive, platinum-resistant epithelial ovarian, fallopian tube, or primary peritoneal cancer, who have received one to three prior systemic treatment regimens. The positive Phase 3 results from the MIRASOL confirmatory trial will support a Marketing Authorization Application (MAA) to the European Union and a supplemental Biologic License Application (sBLA) submission to the U.S. FDA in order to gain full approval. Ongoing clinical development programs are underway to expand into earlier lines of therapy and enter other large patient segments of the ovarian market over the next 5-10 years.

ImmunoGen's follow-on pipeline of promising next-generation ADCs expands AbbVie's growing oncology pipeline of potentially transformative programs across multiple different solid tumors and hematologic malignancies. ImmunoGen's Phase 1 asset, IMGN-151, is a next-generation anti-FRα ADC for ovarian cancer with the potential for expansion into other solid tumor indications. Pivekimab sunirine, currently in Phase 2, is an anti-CD123 ADC targeting blastic plasmacytoid dendritic cell neoplasm (BPDCN), a rare blood cancer, which was granted FDA breakthrough therapy designation for the treatment of relapsed/refractory BPDCN.

**Transaction Terms**

AbbVie will acquire all outstanding ImmunoGen common stock for $31.26 per share in cash. The proposed transaction is subject to customary closing conditions, including receipt of regulatory approvals and approval by ImmunoGen stockholders. The proposed transaction is expected to be accretive to diluted earnings per share (EPS) beginning in 2027.

*Potential Conflicts of Interest*

36.    The breakdown of the benefits of the deal indicates that ImmunoGen insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will

have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of ImmunoGen.

37.    For example, Company insiders, currently own large illiquid blocks of Company stock all of which will be converted into the Merger Consideration not shared with public Company stockholder such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name of Director or Executive Officer | Number of Shares of Company Common Stock (#)[1] | Cash Consideration for Company Common Stock ($) |
|---|---|---|
| *Directors* | | |
| Stephen C. McCluski | — | — |
| Stuart A. Arbuckle | 4,939 | 154,393 |
| Mark A. Goldberg, M.D. | 60,151 | 1,880,320 |
| Tracey L. McCain, Esq. | — | — |
| Dean J. Mitchell | 103,000 | 3,219,780 |
| Kristine Peterson | — | — |
| Helen Thackray, M.D. | 2,822 | 88,216 |
| Richard J. Wallace | 10,000 | 312,600 |
| *Executive Officers* | | |
| Mark J. Enyedy | 553,270 | 17,295,220 |
| Daniel Char | 1,000 | 31,260 |
| Stacy Coen | 33,140 | 1,035,956 |
| Isabel Kalofonos | — | — |
| Renee Lentini | 8,452 | 264,210 |
| Michael Vasconcelles, M.D. | — | — |
| Lauren White | — | — |
| Theresa Wingrove, PhD | 2,811 | 87,872 |

- 10 -

38.     In addition, Company insiders currently own company options, restricted stock units, and other equity awards, all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name of Director or Executive Officer | Number of Shares of Company Common Stock Subject to Company Stock Options (#) | Cash Consideration for Company Stock Options ($) |
|---|---|---|
| *Directors* | | |
| Stephen C. McCluski | 228,597 | 5,597,643 |
| Stuart A. Arbuckle | 213,564 | 5,203,724 |
| Mark A. Goldberg, M.D. | 228,597 | 5,597,643 |
| Tracey L. McCain, Esq. | 89,153 | 2,103,620 |
| Dean J. Mitchell | 145,597 | 3,324,463 |
| Kristine Peterson | 208,597 | 5,204,143 |
| Helen Thackray, M.D. | 95,663 | 2,272,424 |
| Richard J. Wallace | 228,597 | 5,597,643 |
| *Executive Officers* | | |
| Mark J. Enyedy(1) | 4,244,275 | 102,801,621 |
| Daniel Char | 400,000 | 10,428,000 |
| Stacy Coen(1) | 807,270 | 20,780,047 |
| Isabel Kalofonos | 284,250 | 7,353,548 |
| Renee Lentini | 157,121 | 3,939,319 |

| | | |
|---|---|---|
| Michael Vasconcelles, M.D. | 960,000 | 25,056,000 |
| Lauren White | 295,975 | 4,602,411 |
| Theresa Wingrove, PhD[1] | 776,548 | 19,161,498 |

| Name of Director or Executive Officer | Number of Company RSUs (#) | Cash Consideration for Company RSUs ($) | Number of Company DSUs (#) | Cash Consideration for Company DSUs ($) |
|---|---|---|---|---|
| *Directors* | | | | |
| Stephen C. McCluski | 13,090 | 409,193 | 105,458 | 3,296,617 |
| Stuart A. Arbuckle | 13,090 | 409,193 | 63,000 | 1,969,380 |
| Mark A. Goldberg, M.D. | 13,090 | 409,193 | 160,350 | 5,012,541 |
| Tracey L. McCain, Esq. | 13,090 | 409,193 | 50,303 | 1,572,472 |
| Dean J. Mitchell | 13,090 | 409,193 | 142,667 | 4,459,770 |
| Kristine Peterson | 13,090 | 409,193 | 74,954 | 2,343,062 |
| Helen Thackray, M.D. | 13,090 | 409,193 | 40,932 | 1,279,534 |
| Richard J. Wallace | 13,090 | 409,193 | 102,326 | 3,198,711 |
| *Executive Officers* | | | | |
| Mark J. Enyedy | 153,700 | 4,804,662 | — | — |
| Daniel Char | — | — | — | — |
| Stacy Coen | 43,050 | 1,345,743 | — | — |
| Isabel Kalofonos | 47,375 | 1,480,943 | — | — |
| Renee Lentini | 47,805 | 1,494,384 | — | — |
| Michael Vasconcelles, M.D. | — | — | — | — |
| Lauren White | 51,625 | 1,613,798 | — | — |
| Theresa Wingrove, PhD | 78,000 | 2,438,280 | — | — |

39.     In addition, employment agreements with certain ImmunoGen executives entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Name of Executive Officer | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| *Officers* | | | | |
| Mark J. Enyedy | 2,751,620 | 53,956,912 | 118,798 | 56,827,330 |
| Stacy Coen | 933,803 | 15,298,196 | 99,099 | 16,331,098 |
| Renee Lentini | 486,720 | 5,226,192 | 79,399 | 5,792,311 |
| Michael Vasconcelles, M.D. | 1,305,000 | 18,792,000 | 99,099 | 20,196,099 |
| Lauren White | 1,050,000 | 6,216,209 | 99,099 | 7,365,308 |

40.     The Definitive Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41.     Thus, while the Proposed Transaction is not in the best interests of ImmunoGen, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

42.     On January 2, 2024, the ImunnoGen Board caused to be filed with the SEC a materially misleading and incomplete Definitive Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

43.     The Definitive Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Definitive Proxy Statement fails to disclose:

      a.  Adequate information regarding the necessity of hiring two financial advisors for the proposed transaction and the agreement to pay each advisor $77 million.

      b.  Adequate information regarding why the Transaction Committee was not composed solely of independent and disinterested Board members and why the Company Board retained authority over final approval of any potential strategic transaction;

      c.  Whether the confidentiality agreements entered into by the Company with AbbVie differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

      d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and

potentially interested third parties throughout the sales process, including AbbVie, would fall away; and

e.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning ImmunoGen's Financial Projections*

44.     The Definitive Proxy Statement fails to provide material information concerning financial projections for ImmunoGen provided by ImmunoGen management to the Board, Goldman Sachs and/or Lazard and relied upon by Goldman Sachs and Lazard in their analyses. The Definitive Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

45.     Notably the Definitive Proxy Statement reveals that as part of its analyses, Goldman Sachs reviewed, "certain internal financial analyses and forecasts for ImmunoGen prepared by its management, as approved for Goldman Sachs' use by ImmunoGen (which are referred to in this section as the "forecasts")."

46.    Moreover, the Definitive Proxy Statement reveals that as part of its analyses, Lazard reviewed, "various financial forecasts and other data provided to Lazard by ImmunoGen relating to the business of ImmunoGen."

47.    Therefore, the Definitive Proxy Statement should have, but fails to provide, certain information in the projections that ImmunoGen management provided to the Board, Goldman Sachs, and/ or Lazard.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

48.    With regard to the *Management Forecasts (Risk-Adjusted)* provided by ImmunoGen Management, the Definitive Proxy Statement fails to disclose material line items for the following metrics:

  a.  Net Product Revenue, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically, "net product sales attributed to the Company's ELAHERE, PVEK and IMGN151 products;"

  b.  Total Revenue, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically, "upfront payment, development, regulatory and commercial milestones, and royalties for the Company's partnered assets;"

  c.  Gross Profit, including all underlying inputs used to calculate this metric, including specifically, "cost of goods sold expenses;"

    d.   NOPAT, including all underlying inputs, metrics, assumptions used to calculate this metric, including specifically, all underlying inputs, metrics, and assumptions used to determine the Company's net operating losses ("NOLs"), and other tax attributes for the years of 2023E through 2027E (in the amounts of $5 million, $26 million, $29 million, $46 million, and $59 million, respectively) utilized;

    e.   The specific benefits to the Company derived from referencing ImmunoGen's NOLs; and

    f.   EBIT, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically, "research and development expenses and selling, general, and administrative expenses;"

49.    The Definitive Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

50.    This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51.    Without accurate projection data presented in the Definitive Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs and Lazards' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*
*Goldman Sachs*

52.     In the Definitive Proxy Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

53.     With respect to the *Illustrative Discounted Cash Flow Analysis*, the Definitive Proxy Statement fails to disclose the following:

a.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 11.0% to 13.0%;

b.  ImmunoGen's weighted average cost of capital utilized, and the specific inputs, metrics, and assumptions used to calculate the same;

c.  The illustrative terminal values for ImmunoGen, calculated;

d.  The specific inputs, metrics, and assumptions utilized in determining the Company's NOL carryforward, and other tax credits.

e.  The specific inputs, metrics, and assumptions utilized in the application of the Capital Asset Pricing Model;

f.  The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rates ranging from -15.0% to -5.0%; and

g.  The number of fully-diluted outstanding shares of ImmunoGen common stock as of September 30, 2023.

54.     With respect to the *Premia Paid Analysis*, the Definitive Proxy Statement fails to disclose the following:

    a.   The specific premia analyzed; and

    b.   The specific inputs, metrics, and assumptions used to determine the utilized range of 51% to 101% to ImmunoGen's closing stock price on October 23, 2023.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lazard*

55.     In the Definitive Proxy Statement, Lazard describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

56.     With respect to the *Discounted Cash Flow Analysis*, the Definitive Proxy Statement fails to disclose the following:

    a.   The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 11.0% to 13.0%;

    b.   ImmunoGen's weighted average cost of capital utilized, and the specific inputs, metrics, and assumptions used to calculate the same;

    c.   The illustrative terminal values for ImmunoGen, calculated;

    d.   The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rates ranging from -15.0% to -5.0%; and

      e.   The number of fully-diluted outstanding shares of ImmunoGen common stock as of September 30, 2023 utilized.

57.    With respect to the *Selected Publicly Traded Companies Analysis*, the Definitive Proxy Statement fails to disclose the following:

      a.   The specific enterprise value of each selected company;

      b.   The specific companies' probability-adjusted revenue for 2028 ("EV/2028); and

      c.   The specific inputs, metrics, and assumptions used to determine the utilized EV/2028 range of 1.0x to 2.3x.

58.    With respect to the *Selected Precedent Transactions Analysis*, the Definitive Proxy Statement fails to disclose the following:

      a.   The specific date on which each selected precedent transaction closed;

      b.   The aggregate value of each selected precedent transaction; and

      c.   The specific inputs, metrics, and assumptions used to determine the utilized reference range of target company's estimated probability-adjusted revenue for the fifth calendar year following the announcement Multiples of 3.2x to 4.9x.

59.    With respect to the *Premia Paid Analysis*, the Definitive Proxy Statement fails to disclose the following:

      c.   The specific premia analyzed; and

      d.   The specific inputs, metrics, and assumptions used to determine the utilized range of 59% to 116% to ImmunoGen's closing stock price on October 23, 2023.

60.     With respect to the *Research Analyst Price Targets Analysis*, the Definitive Proxy Statement fails to disclose the following:

    a.   The specific price targets analyzed; and

    b.   The specific Wall Street firms that generated the analyzed price targets.

61.     Further, the Definitive Proxy Statement fails to disclose any work performed by Lazard for AbbeViefor the two years immediately preceding the deal.

62.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

63.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public ImmunoGen stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## <u>(Against All Defendants)</u>

64.     Plaintiff repeats all previous allegations as if set forth in full herein.

65.     Defendants have disseminated the Definitive Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

66.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

67.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

68.     The Definitive Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Definitive Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

69.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

70.     The Individual Defendants were at least negligent in filing a Definitive Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Definitive Proxy Statement not misleading.

71.     The misrepresentations and omissions in the Definitive Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such

misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

72.     Plaintiff repeats all previous allegations as if set forth in full herein.

73.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Definitive Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

74.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Definitive Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Definitive Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Definitive Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

75.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of ImmunoGen's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Definitive Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Definitive Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

76.     The Individual Defendants acted as controlling persons of ImmunoGen within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause ImmunoGen to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled ImmunoGen and all of its employees.  As alleged above, ImmunoGen is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Definitive Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained

therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 5, 2024                          **BRODSKY & SMITH**

By:  *Evan J. Smith*
                                                Evan J. Smith
                                                240 Mineola Boulevard
                                                Mineola, NY  11501
                                                Phone:  (516) 741-4977
                                                Facsimile (561) 741-0626

                                                *Counsel for Plaintiff*